Case No. 20-5233, Campaign Legal Center v. United States Department of Justice, Abellant. And Case No. 20-5234, Campaign Legal Center v. United States Department of Justice, Abellant. Mr. Sinsdak for the Abellant, Ms. Olin for the Eppley. Thank you, Mr. Sinsdak. Thank you, Your Honor, and may it please the Court, Jerry Sinsdak, appearing on behalf of the Department of Justice. Plaintiff in this case seeks drafts and embedded editorial comments on a letter that was sent by the Department of Justice to the Department of Commerce in December of 2017. Those drafts and the embedded comments within them are both pre-decisional and deliberative and therefore squarely qualify as protected by the deliberative process privilege. They are pre-decisional, as the declaration submitted made clear, in the sense that they predate the final and official copy of the letter that was sent in December 2017. They are deliberative in that they reflect the give and take of the agency consultative process regarding what material should be included in the letter, what material should be excluded, comments and questions, and analyses of the letter itself, and so forth. And therefore, they plainly fall within the deliberative process privilege. The District Court concluded otherwise on the ground that they were not pre-decisional because they post-dated the decision to send a letter. That is incorrect. As I mentioned, the deliberative process here is the deliberative process that culminated in the final version of the letter that was sent in the official version of the letter that was sent to the Department of Commerce in December of 2017. Once the letter itself was finalized, so events after that would not be protected, at least as relevant to the decision you flagged here. Yeah, I mean there could be, you know, as Your Honor is well aware, I mean there could be, you know, if there were press inquiries that might kick off a new deliberative process about how to respond. But none of these documents are about that. No, they're not. They are drafts of the final letter and an embedded commentary from Department of Justice staff on the letter. On your view, what is the relevant decision to which these documents are pre-decisional? It's the official version of the letter that was sent on December 2017. That final letter, that's the official letter from the agency embodying the decision. And do we, so I'm not sure anything turns on this but I'm just trying to get straight in my mind what the decision is. Should we say that the Attorney General's decision that DOJ would send the letter was a final decision, but then there was a second final decision about what the letter would say? Or should we think of it as the Attorney General's direct decision to file something was not final because maybe he would have changed his mind? Your Honor, I agree with you. I don't think anything turns on this. I think one could say there was a deliberative process that led to the decision to send a letter as there often will be. But there was certainly a separate or an additional or one could think of it as all the same deliberative process over what the letter should say, what its content should be. And that culminated in the final letter. So I do think it's true. There was really no final official action here until the letter went out. And so in theory, the Attorney General could have changed his mind at any time and not sent the letter. But if one were to conclude that the Attorney General had made up his mind and was not going to be convinced otherwise, there would still exist a deliberative process over what the contents of the letter should be and so forth and so on. And for that reason, these documents fall squarely within the deliberative process privilege. How do we think about finality for these purposes of what a final decision is? I mean, the Supreme Court's recent decision in the Fish and Wildlife case from earlier this year, you know, repeatedly suggests to the Bennett v. Speer test for finality. And I'm wondering whether you think that is the type of inquiry we should use in FOIA cases. I mean, Your Honor, I hesitate to say that because I don't think it's like it's the same test that might apply in an APA action. I mean, you know, whether whether this letter has a real operative effect or creates legal rights, that's a separate issue. I don't know. But I think what this court has said in cases like the Dudman case, for example, you know, which involves an official history by the Air Force that this is the official position of the agency. This is its culmination of, you know, of its views or of the decision making process. So I think in that sense, this is this letter was the official letter. I don't you know, I don't know that it would meet the task for Speer in terms of at least it would in the sense of a culmination of the decision making process. I'm not sure it would, you know, for the purposes of whether it would be subject to APA review as a final agency action. So you don't think those tests are coterminous? I mean, I'm not I don't think it I guess the answer to that question. I mean, I'm hesitant to answer because I don't know what the department's official position would be on that. You know, I do think when you're talking about drafts of a document, whether that when you have the final official document, that's that's relevant for purposes of FOIA, whether that document would in and of itself be final agency action for other purposes. I don't think that's necessarily the case. Couldn't possibly be final agency action under the APA. It's just exactly Jay's advice to commerce. The final agency action is commerce passing a reg or not adding the. Are you are you a lawful resident or are you a citizen or not to the census? Exactly. Yeah. So I don't think it would qualify in that sense. But I don't think that's the sense this court has used the term. It's interesting that the Supreme Court repeatedly states to the test in discussing that. So, yes. And, you know, I think in reference and references legally. Right. And I think one thing that's clear here, you know, whatever test one applies to to the final letter. Certainly the drafts of that letter weren't documents that the agency treated as as the final word or the official word. These are these are drafts circulated by staff of the department and comments and so forth from those staff members. And certainly nothing. Whatever the final letter might qualify. Certainly these drafts weren't treated by the agency as final and not subject to further change. Struggling with another Supreme Court decision in the Commerce Department case. That said, the decision to claim that this question would promote the Enforcement of Voting Rights Act was contrived in the Supreme Court's words, contrived decision. If an agency head is making something up, it's completely false. But I'm going to say it. I'm going to go out to reporters. I'm going to lie through my teeth because I don't want to tell them the real reason. Draft me up some lies. Are you aware of any case in the common law that applied the deliberate process privilege to that where it's not you're not really making a decision. There's no decision to be made. I'm exaggerating here, of course, the Supreme Court was softer as I would, but I'm for hypothetical reasons. Agency head says I'm a lie. Just for kicks I'm going to lie. I'm not making a decision here. Give me some lies. That's a deliberative process that's protected by the common law privilege. Well, Your Honor, I'm not aware of cases either way. I'm not aware of a case court saying it is or isn't. I know there. Well, I guess obviously, as Your Honor knows, that wasn't the circumstances here. And I think it would depend when you look at the declarations and you look at who was involved in the drafting process. There is no reason to think that the individual staff members were anything but sincere in their efforts to deliberate about this letter, including which could include critical comments about the letter and its purpose. So from their perspective, I'm just asking you, though, to have kind of reconcile the Supreme Court saying that this was a contrived decision with what with the coverage of the deliberative process. Well, first of all, I don't want to tell you that there were cases kind of going different ways. Some would say that's just not covered in common law by the deliberate process privilege. We supply this. No, Your Honor, because I think as this court has said in cases like National Security Archive, I mean, what the point of the privileges to protect staff, for example, or individuals who are participating in the consultative process to be able to provide their candid advice and so forth. So was this letter providing advice to the attorney general? Or was it just... Yeah, I mean, the attorney general... How to articulate the attorney general's conclusively determined position. One way to look at it is the attorney general, even assuming he made the final decision, then he delegated to staff the equally important considerations about which arguments to make in support of that decision and what justifications to proffer and to get advice on how to do it and so forth. I think that the substance that it was going to be to enforce, help enforce the Voting Rights Act, that was already predetermined as well. But I mean... It feels more like, how are we going to message that? The decisions were made, how are we going to message it? Well, I think that is a common feature. I mean, if we just use the Reporters Committee case, for example, I mean, James Comey decides to send a letter to the editor and decides to defend the policies of the FBI, there still remains a deliberative process exactly how to go about doing that and what the content of those communications. And no one... The deliberative process there was how do we, do we stick with our policy, our old policy that's under fire? If we want to keep it, how are we going to keep it? It seemed to me there wasn't a fake policy or anything like that. Well, I think I don't, I mean, I don't want to comment too hard. I think the Supreme Court actually said there was nothing inappropriate about any of the individual steps in the process. And so if we're talking about deliberations among staff of DOJ about what goes into this letter, I don't think there's any reason to assume the Supreme Court thought that the staff members were engaged in anything other than a sincere effort to provide their candid comments. No, it could be a sense. So, one, I made it extreme to make sure I'm hypothetical and we're really not talking about that much. That's the case in front of just to understand the contours of the process. But if what they're really not doing, they're really not advising someone, decisions have been made, here's how you do it, voting rights, but they are, you know, sincerely trying to figure out how best to articulate that. I just, I didn't see that in your affidavits. It just seemed to sort of say, pre-decisional, this was pre-decisional, it was draft, it counts, as opposed to explaining for us, you know, what kind of deliberations, substantive policy deliberations still were to be made. I can imagine all kinds of them, but it's not my job to imagine them because I could be wrong. There's supposed to be the declarations, but they're not. Well, you know, I guess I would point, for example, the declarations for JA406 to 410, for example, in which there are explanations of, you know. Hang on, let me catch up with you. Sure.  I think it says, you know, we are offering analyses, suggested edits, contemplating strategies. It's just boilerplate language for any draft. I bet you that shows up in lots of affidavits. There's nothing to particularize helping us to understand what was still being deliberated, what the concerns were. Well, certainly, I mean, I think it is contained. Sure, and I can point to more examples, but I think what is being debated, as explained here, is what is the content of this letter? How can we make it more persuasive or stronger? Or, you know, this is something that's going to be viewed by others. And you see, you know, it notes that it includes, and I don't have the exact date for this, but analysis by staff of the letter, comments asking for clarification, comments raising questions, and so forth. And I think that that clearly indicates that, you know, they're still debating what this letter should say, a red line, proposed edits. What are the justifications? I guess that they were drafts, right? I guess all it does is say these were drafts, right? Drafts have red lines, edits, comment bubbles, nits, those types of things. But there's nothing here. Again, I can imagine a lot in my head as to what people would want to be careful about in articulating something like this for all kinds of strategic reasons. But I'm imagining that in my head, because I didn't see anything in your affidavits. You could say safely without revealing content what kind of concerns were being addressed. I mean, perhaps they're not as clear as they could be. No, they're not beyond boilerplate. It's not clear. There's nothing there that wouldn't show up in every single affidavit for a draft something or other. And maybe there's a better rebuttal. If there are particular parts of any of these affidavits, particularly in the OIP one that you can point me to, that help me understand, in this scenario, where a final decision had been made to ask for the question, and to do for it on the grounds of Voting Rights Act enforcement. If you can point to me, take those as a given. Where there's something that doesn't show up in this particular rest of these cases, doesn't show up in every other affidavit like this. Every other draft document FOIA affidavit. That would be really helpful. You can do that on rebuttal. Okay, I can do that on the break. Yeah. But I do think the policy, you know, the justifications and contents of a policy announcements are as important as the part you know they're integral to the policy itself so debate about what you know what should be included and what shouldn't be in do implicate policy concerns. And I'm happy to answer any questions I have a particular rights couple, but I don't want to keep on Jay 608 to start. This is a civil rights divisions on index. Yes. So the dates go. Very sweeping your December to December 2017. And we all know that at some point. Anything after December 12 for sure but certainly sometime during the day on December 12 things started stopped being pre decisional, because that's when the letter was issued. And it describes in that the end of that first paragraph there that a few emails discuss the logistics of transmitting the Gary letter by fax and email. We agree that once you've got final sign off, and someone's just figuring out whether to do fax or email, but that's not pre decisional part of the drafting process, or if not point me to an affidavit statement that explains how on earth that is part of the deliberative process. Yeah, I mean if all we're talking about is the logistics of transmitting it, you know, unless there's some, you know, I suspect, I'm not going to fight you on that point. And that may have been something that was released. Because these are just suggesting that parts of the emails but to extend what this is, this is great. I don't know if they were withheld though that would be, it's not clear at all to me, because to be clear what documents that this was not redacted so you're not you're not you're not saying that. No, to be clear, the thing we're defending here are the drafts of the letter the comments included the cover emails which also included comments, you know, of a piece I do that, but you're not defending things that are just talking about the logistics the timing or the which mechanism to use. I'm not sure I'm not sure I would assist I would assume or not, but you know if it's simply just send it by fax or not I mean I know I was reading the record and, you know, we're going to fax this was I think one of the emails, you know, that was disclosed so I don't but I would assume that. But anyway, I apologize for that but I what were the focus here is on shows up numerous times here. It shows up again on j 615. Well, and we did disclose a number of things that are, you know, only partially redacted for example, so I can check it. But what I'm, but the focus of the appeal is not on. Yeah, okay. I was concerned about that. Okay. There are other ones that emails just seem to be talking about timing and then there's a block out and it's not at all clear to me given these one index descriptions, whether that would follow that was talking about timing facts email, or whether that was talking about a whole new deliberative process, something that would fall with a little bit of process here. So it seems to me it's a little bit. There's a lot of confusion to me at least between respond descriptions and in the bond, you know, indices covered a number of documents but many of which were released some of which were released in response to the district court's opinion. In this case, and through. So it's, and I did, you know, just to, you know, go back to an earlier question I mean I think we see in the following paragraph you know these emails discuss edits comments and revisions emails also discuss draft versions formulation of additional questions to elicit relevant information in numerous edits and changes these emails contain questions and I'm not, I'm not just being that. So, you know, the weirdness of that other line in that right everything else is describing stuff you withholding would seem weird to have a sentence in there that describes something that you're releasing. Yeah, I agree with that. But, you know, but I but I'm raising that paragraph and it's hard to know, you know, to respond to your questions about, you know, descriptions of what's contained that, you know, in these drafts and comments and edits. Yeah, but that's something there's nothing particularized there. Right. I think we can all agree that every single. Every time you claim the deliberate process for documenting as a for drafting process of a document because it was drafts. It was comments was questions it was transmissions. But this one is an unusual case where we were, you know, I guess the decisions already been made, as well as at least some level of content decision, it'll be the Voting Rights Act. And so, but as a support to the public understand because of on index serves a public accountability process to help us understand what the type of decisions making that was left to be done. It's a decision making. Yeah, and I guess the, you know, what I would say the policies is regarding the specific contents and justifications and so forth that appear in the final letter. Thank you very much. Thank you. Absolutely. Good morning. Elizabeth O'Lean for the appellee campaign legal center. The court should upload the district court's findings of the drafts and emails issue and this unusual case are not be decisional and not privileged for three reasons. First, withholding the documents would undermine the aim of FOIA to open agency action to the light of public scrutiny and provided against corruption, because the Gary letter sets forth a contrived and pretextual justification for an already made decision. Second, the documents are functionally final decision in draft form, and that's not pre decisional. And third disclosure will not harm or chill the internal agency process, because the Department of Justice was not engaged in policymaking when it drafted the Gary letter. Attorney General had said, I am not sending a letter. I'm not requesting a citizenship question. This is hypothetical obviously. I think it would damage our enforcement of the Voting Rights Act or some other statute. We are not doing it. That is my final decision. And it's my final decision, I'm making it because it's going to harm civil rights enforcement. Go draft that letter. Would drafts of that letter also be released? Yes, those drafts would also not be pre decisional, because in your example where the Attorney General said to write a letter saying that we will not support this rationale is essentially the same as the facts that we have here. How do you distinguish that from reporters committee? Right. I'm going to do an editorial let's get it written and do an editorial defending our practice. Let's get it written. Yes, so the distinguishing point between the reporter's case and this case, as you wrote, there is no allegation that Director Comey was providing any sort of direction, or explaining the basis for a final decision, his subordinate, and these emails. That was sort of in the sentences and the details but there was no question that he had made clear there's going to be an editorial, and it's going to defend our policy. That's a direction to them. They didn't have discretion to make that what the substance of it was going to be, it seems to me, identical to my hypothetical. So it is different, Your Honor, and the reason that it's different is, in this case, not only did the Attorney General direct his subordinates to write the Gary letter. He also directed them the rationale to provide. So, unlike Director Comey, he did provide direction explaining the basis for the final decision, and we know that. What about when the Solicitor General authorizes an appeal. And that process will identify what issues can be raised on appeal, what cannot be raised on appeal, what arguments are made, and Solicitor General signs off and says, appeal, which means to the litigating appellate staff, go write the brief, consistent with the directions and the memos. So does that mean every draft of a Justice Department brief authorized by the Solicitor General is also post-decisional? No, Your Honor. And I think a key difference here is that the Attorney General did direct the staff to use a specific rationale, but he also was not engaged in policymaking and agency-oriented policy judgment when he made that determination. At the very beginning of this matter, to take a slight step back, Secretary Ross had asked his staff to reach out to the Department of Justice and other agencies to find someone willing to support his position. The Department of Justice did engage in a deliberative process where they considered the voting rights rationale and the staff determined that that was not something that they could support. It then went back to Secretary Ross, who said, I want this to happen. There was a call scheduled between Secretary Ross and Attorney General Sessions. Just prior to that call, the record reflects at 190 that there was an email between the Department of Justice staff and the Department of Commerce staff, and the Department of Justice wrote, it sounds like we can do whatever you need us to do. The AG is eager to assist. So that email, I'm sorry, Your Honor. Why does any of this matter to whether there's actual policymaking? I mean, I understand your position is that something unsavory happened here because political appointees disagreed with the staff and made a decision about what should happen here. But so, I mean, in a context in which you think that the decision making is not appropriate or is somehow fudging, I mean, are you suggesting that you get a kind of super FOIA in those cases? You know, you get kind of extra FOIA even when they are actually deliberating and going through a process just because the policy is ultimately not one that is one that you agree with? I guess I'm not really sure what all of this is related to with respect to whether something is deliberative. I mean, people are deliberating, maybe not in the way that you think is appropriate, but I'm not sure how that takes it out of the deliberative and pre-decisional box. So to answer your first question, no, we are not advocating for a super FOIA, and I don't think that any sort of super FOIA is necessary here. The emails and documents are properly disclosed under the law as it exists today. In order for something to be pre-decisional, which it was the only prong that the district court got to, it would be a document that was prepared to assist an agency decision maker in arriving at his decision rather than to support a decision already made. And here, based on the facts, we know, particularly as evidenced by the email from the Department of Justice staff to the Department of Commerce staff, that the decision for the content of the letter was already decided. There was already a decision from the highest level of the Department of Justice that a request would be made to the Census Bureau to add the citizenship question, and that the rationale for that would be enforcement of the Voting Rights Act. Isn't that, as Judge Millett was also discussing with her example of the solicitor general, I mean, isn't that a very common feature of government decision making, where a senior official decides, makes a decision about what's going to happen? Maybe the primary arguments that are going to be made, but there's still a lot to be worked out in the details. Your Honor, this case is very different from, and it is very unusual, and it is not like any of the other cases in the existing precedent where that could be the case. The facts that we have here and the record that we have here includes a decision from the Supreme Court that was written by Chief Justice Roberts, in which he characterized the Voting Rights Act rationale as pretextual. So it was not in fact the actual reason for the decision. Any discussion that would have been occurring in the drafting of the Gary letter would not have been about an agency policy decision. I didn't see this type of argument in your brief. I saw you arguing that this decision had already been made, and the rationale had already been given. This was all post-decisional, and they weren't claiming that this was a messaging case. I didn't see you arguing that instead there's a question about whether the deliberative process privilege applies at all in the case of, for example, hypothetically, the false or fraudulent agency pronouncement. I just didn't see that. I didn't see any cases or discussion about the common law history of the deliberative process privilege. So it sounds now like you're trying to say this is sort of unique for precisely those reasons. So, Your Honor, on page 8 of our brief, we did address this briefly, and we said that the Gary letter itself does not reflect a typical agency process for formulating a process. It may not be typical, because things aren't always typical. Editorial draftings aren't always typical either. I didn't see you arguing that as a matter of the common law deliberative process privilege that Exemption 5 brings into the FOIA, it just doesn't apply. You take it as applying, but you just say the terms aren't satisfied here. You said this is post-decisional. Come on, this is post-decisional, and there's nothing really deliberative going on. Yes, Your Honor. Yes. to take an appeal involving the Department of Commerce. And a lot of the line lawyers in DOJ are recommending against appeal because they think the government's position is very difficult. Secretary of Commerce calls the Attorney General and says, this is really important to us. Please help me out. Attorney General says, I understand. I'll do it. The Attorney General tells the Solicitor General, this is really important. You need to do this. The Solicitor General authorizes the appeal and gives general direction. We're going to take the following position. It's one sentence. On that hypo, would the draft DOJ briefs implementing that decision be protected? The draft DOJ briefs would be protected. Okay, how is that different from this case? So that is different from this case, because in the hypothetical that you provided, there would be latitude amongst the DOJ staff to craft the arguments. And the difference here is that there was not. I think there's latitude from the Attorney General says we're going to send a letter, taking the position that this question would help voting rights enforcement. And the end product, which is a three page letter that reads like a substantive, very substantive legal analysis, it could be like the summary of a brief. And, you know, some lawyer in DOJ decided that Reyes versus City of Farmers branch was a good case to cite for some proposition about citizen voting age population. You don't think there are legal judgments in going from the direction of the Attorney General to this final product? No, Your Honor. I'm sorry. Yes. But the distinguishing factor in this case is that the content of the Gary letter was not the actual reason, actual policy reason for the request for the citizenship. And it was not specifically called out in our brief, but it is in the record at page 376. There is a memorandum from the House of Representatives who has done an investigation and their investigation through the interviews revealed to them that the actual purpose of this request had to do with redistricting and an attempt to entrench a political party in power. So the Gary letter, as the Supreme Court found, was simply a pretext. It was not describing an actual policy decision of the department. And this is further demonstrated by the fact that after the Census Bureau received the Gary letter, they reached out to the department to confer further like in fish and wildlife. There was an expectation that the draft would be provided to EPA and they could discuss it back and forth before reaching a final, a final biological opinion. In this case, the Census Bureau reached out to the department and the department, as the Supreme Court found, showed no interest in further discussion. You are advocating for a different standard, right? Because if the, if Judge Katz's hypothetical would be covered by the privilege, but this letter is not, then you are asking for a different standard in the context where some external party thinks that the decision making is pretextual or inappropriate, right? You're asking for a different standard based on the substance of how the decision was made. Because you're saying in the one context where it's a brief like that, so there's some kind of honest, you know, decision making process and, and that's covered. But if it's a pretextual decision making process, or if someone thinks it's a pretextual decision making process, that is not protected by the privilege. I mean, that's the distinction you're drawing, isn't it? Yes, and I would qualify that by saying that the purpose of the deliberative process privilege is to protect the agency decision making process rather than to protect decisions that are already made. What if the State Department or the CIA for national security reasons said, we need to issue a letter that says, the reason we are drawing down our embassy staff and country X is because of COVID concerns and so on. And in fact, the reasons are much more complicated, and it is all a ruse to cover up the fact that there is say an impending military action, why the United States are an ally. So it's an deliberate, deliberately, sorry to use that word, pretextual explanation is going to be given by a national security agency or foreign relations agency, because that's the best way to protect the interests of the United States of America. They say go draft that. The drafts of that, because they're pretextual, openly within the agency known to be pretextual reasons. Would they be available? Your Honor, I'm sorry. No, would they be protected or not? You're saying they would not be protected because they're pretextual. So I have to admit that I am not familiar with national security law. You don't have to be, this is FOIA law. So just FOIA. With deliberative process privilege under FOIA, your exception that you want to make for pretextual agency decision making, would that apply to a press statement issued by the national security or foreign relations agency that was pretextual? Your Honor, so assuming that there is not some other statute of which I'm not familiar with. We're assuming there's no other exemption applicable. This is all we got, one way or the other. So I think then the key place to focus is the three aims of the deliberative process privilege. And I think in your example, and in this example, the three aims are instructive. And I think that you would reach the same outcome, because the purpose of FOIA is to shed. Same outcomes as you're asking for here. So we would release the drafts of those, those drafts of that press release. Right. And so the three, the three points. Even though those drafts would be saying things about here's the real reason we're doing it, but we can't say that. So here's, let's try saying it this way. And then someone says, well, we can't say it that way, because that's going to spill the beans on some other operation we have going somewhere else in the world. So let's rewrite it this way. All those things are going to come out because the enterprise, the exercise itself was pretextual. Again, Your Honor, I think it would come down to, in your hypothetical, a question of whether the State Department was actually engaged in policymaking. And in your example, it sounds like there were real policy considerations and concerns. What would drive the analysis would be whether there was any danger that the subordinates would feel inhibited by their opinions. And in this case, the internal discussions, there would not be because they had agreed up front, long before drafting started, months before drafting started, that they agreed to the decision and the voting rights rationale. There would be no danger of a premature disclosure of a policy that had not been finalized, because in this case, again, the decision was made up front, the rationale was decided up front. And there would also be no danger of confusing the public about the reasons or rationales in this case. So, Ms. Olin, your position then as a legal matter is that a document is only deliberative and pre-decisional, not just because it's deliberative and pre-decisional, but if it's deliberative and pre-decisional and serves the policy purposes of that protection. So judges then have to determine not only whether something is in fact deliberative and pre-decisional, but also whether it meets the policy purposes behind that protection. I don't think that it necessarily matters as much whether the document meets the policy purposes, and maybe I'm misunderstanding your question, as much as whether it reveals an agency's or an official's mode of formulating or exercising policy judgment. That was not the case here. Enforcement of the Voting Rights Act was not a policy of the Department of Justice. It was, as the Supreme Court found, a pre-tactual reason for a different policy, which was redistricting, and that was what was not described in the Gary letter. I think it would be a very different circumstance if the Gary letter described the actual policy reason, which was the redistricting. Because it describes a pre-tactual reason that we now understand was not the reason for the letter, I think that's the difference. I don't understand the relevance of that, because Supreme Court said that the Department of Commerce's decision, while not itself unreasonable, was pre-tactual because the DOJ voting rights position didn't reflect the actual reasons why the Department of Commerce wanted to add the citizenship question. So, okay, maybe the Department of Commerce wasn't being as candid as it could, but why does that tend to suggest that within DOJ, when the Attorney General says, we are going to take the position that this question would be helpful for voting rights enforcement, why would that tend to show that the DOJ lawyers who were left to operationalize that decision were doing anything other than what DOJ lawyers do every time they operationalize the appeal decision by working on the brief? Correct, Your Honor. So I think the answer to your question goes back to the first question that you asked of Mr. Sendak, which is, what is the operative decision here? And I disagree that the operative, my client disagrees that the operative decision is the decision to write the letter. The operative decision is the Attorney General's decision to make the request and to use this rationale. So at that point, it has removed the discretion from the staff. And so that's the difference. I'm not sure I quite answered your question. I mean, that's an answer to my question, but it doesn't distinguish every single DOJ appeal where the SG does exactly the same thing on the front end. Again, Your Honor, I would submit that the key difference here is the fact that the decision and the rationale were not the actual policy of the Department of Justice. In the briefing that you've described, you know, in your hypothetical, ostensibly, the arguments that they are putting forth to the court would be the Department of Justice's actual... The voting rights angle was the actual position of the Department of Justice. The record reflects that it was a position that the department did not support. They had actually considered... But it was the decision of the Attorney General. That is correct. That is correct, Your Honor. And then the line attorneys were charged with operationalizing it. That is also correct, Your Honor. But the distinction is the decision point, because if the decision is the Attorney General's decision to give this order to his staff, then the Gary letter is a post-decisional document. And they had no discretion, whereas if, as the department argues, the Gary letter is the decision and the contents of it are the decision, then it wouldn't be. But it's our position, as the district court found, that the operative decision is the Attorney General's decision, so the Gary letter is necessarily post-decisional. Thank you. Colleagues, any further questions? Thank you very much, Ms. O'Leanville. I'll give Mr. Sindek two minutes. Thank you, Your Honor. I think the only thing I have, really, is a response primarily to Your Honor's earlier questions about... I have a number of... I have particular eyes to this case. On page 456 of the J.A., drafts were circulated for additional review and input. Let me catch up. Sorry about that. I know we need to speed your time up by turning pages. Okay? This is the middle of paragraph 30 or the end of it. They contain questions, a list of other information, comment bottles, edits regarding the final contents of the letter for determining the final contents. The next page, 457, they talk about there being opinions, comments, edits, and recommendations. There's similar wording. I know Your Honor is going to say that was typical of other... If you can represent to me that that's atypical language as opposed to... Well, I think what's typical in the sense... ...language in every deliberative process affidavit, I'd love to hear it. Well, I think they are similar, in fact, very similar to declarations... For example, in Machado Amadis, I think if I'm pronouncing it correctly, quoted language very similar to this as being satisfactory. I think the implication here is that, you know, we have the final letter. We know the arguments that were made in that letter. And these are comments and suggestions and edits and so forth, questions about what those justifications should be and so forth. And that implicates policy because, of course... The affidavits in Machado, if I'm saying that right, get a lot more detail about the specific process. I guess I'm... There's a specific process and they named the process and how it all worked internally. That's not here at all. This could be any FOIA affidavit for any agency. Well, I guess, I mean, when an agency is settling on its official position and publishing its reasons for that position, for example, of course, I think... It's still the same idea. What you had to do was sort of say, look, even when a decision has been made that we're going to do this and a rationale has been given, it's still important within the government. Important decisions still have to be made. Regarding what the justifications are, what the support for... So, you know, what the support for that position... I already told you the justification, the Voting Rights Act, so... Well, what specific arguments, what material should be included, what material should be excluded, what facts, what cases should be cited, how long the letter should be, you know, how it should be phrased and so forth. I mean, you're a better talking affidavit than I got here. Well, I apologize that wasn't made clearer. I think that's the implication of these comments. And, you know, we have a number of cases, for example, like Kerkorian, where, you know, there were person drafts of a letter and those were considered deliberate... I'm just saying we know from Machado that agencies are actually fully capable of giving us more granular agency-specific explanations than what we have here. I appreciate that, Your Honor. Any other questions from my colleagues? You are content to have us decide both deliberation and foreseeable harm on the current affidavits. You didn't have the benefit of Machado when the affidavits were written. Yes, Your Honor. I mean, I would point out the unforeseeable harm issue hasn't been briefed by or decided by the district court or briefed by the parties. It hasn't even been raised, I don't think. It hasn't been raised. But, yeah, I mean, I think the deliberative... we are comfortable with the deliberative. I mean, that was briefed. We did brief that and the declarations are... Great. Thank you. Thanks to all the cases submitted.
judges: Millett, Katsas, Rao